**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 15, 2021

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Shaquille Carter*, 15 Cr. 380 (DLC)

Dear Judge Cote:

On September 7, 2021, the Court ordered the Government to file by October 15, 2021 a submission outlining the evidence from the trial of Shaquille Carter ("Carter" or the "defendant") in the United States District Court for the District of Vermont. As noted in the Government's September 7, 2021 letter (Dkt. 76), defense counsel consents to resolving the pending violation of supervised release in this manner and to the admission of the trial transcripts.

For the reasons set forth below, the evidence from Carter's trial proves by a preponderance of the evidence that Carter violated his supervised release by committing a federal crime—the possession with intent to distribute heroin, fentanyl, and 28 grams or more of cocaine base—on or about August 21, 2019.

## Background

As background, on October 23, 2019, the United States Probation Office ("USPO") submitted a violation report setting forth ten specifications relating to, among other alleged violations, Carter's arrest by Vermont state authorities on narcotics charges on or about August 21, 2019. When Carter failed to appear following the Court's issuance of a summons for an initial hearing on the violations on October 25, 2019, the Court signed an arrest warrant for Carter. In the interim, the United States Attorney's Office for the District of Vermont ("USAO-Vermont") took over Carter's narcotics case from state authorities, indicted Carter with one count of violating 21 U.S.C. §§ 841(a), 841(b)(1)(B), and arrested Carter on or about January 3, 2020.

Case 1:15-cr-00380-DLC   Document 82   Filed 10/20/21   Page 2 of 5
Case 1:15-cr-00380-DLC   Document 79   Filed 10/15/21   Page 2 of 5

Page 2

On September 24, 2020, a jury convicted Carter following a two-day trial.[1] Carter was sentenced on April 20, 2021 to 60 months' imprisonment.[2] On April 21, 2021, Carter filed a notice of appeal.[3]

### Trial Evidence

Carter was arrested on August 21, 2019 following a traffic stop of a Toyota Tacoma in which Carter was a passenger (the "Truck"). At the time of the stop, Melissa Rouleau was driving the Truck, Carter was the rear passenger of the Truck, and Neil Scichitano, the Truck's owner, was sitting in the front passenger seat. (Ex. A, at 40:9-41:3). Special Agent Hoffman from the Drug Enforcement Administration ("DEA") testified that a confidential source ("CS") had contacted law enforcement with a tip, and provided a description of the Truck to law enforcement. (*Id.*, at 141:25-142:8, 143:3-8).[4] DEA agents located and surveilled the Truck, which had three occupants later identified as Rouleau, Scichitano, and Carter as it traveled from the Burlington area to St. Johnsbury, where law enforcement observed Carter and Scichitano exit the Truck, go into a house for approximately five minutes, and return to the Truck. (*Id.*, at 143:9-145:14, 150:16-24). Special Agent Hoffman then contacted Vermont State Trooper Giancarlo DiGenova, provided the license plate and description of the Truck, and asked Trooper DiGenova to find probable cause to pull over the Truck. (*Id.*, at 33:1-23, 145:23-24).

After speaking with Special Agent Hoffman, Trooper DiGenova located the truck and pulled it over at approximately 8:00 p.m. after observing the vehicle commit a traffic infraction. (*Id.*, at 33:24-34:17, 39:10-11). At some point during the traffic stop, Rouleau and Scichitano were directed to step out of the vehicle, while Carter remained in the backseat. (*Id.*, at 43:18-44:1). After Rouleau and Scichitano were outside of the Truck, Trooper DiGenova observed the truck

---

[1] Transcripts from Carter's trial are attached as exhibits to this submission. It is the Government's understanding that there have been delays in receiving final trial transcripts due to the court reporter's health issues and subsequent retirement. The attached exhibits are copies of the transcripts the Government received from USAO-Vermont, some of which have been prepared by witness rather than by day. Exhibit A is the transcript from the trial day of September 22, 2020; Exhibit B is the transcript from the September 23, 2020 cross examination of Special Agent Timothy Hoffman; Exhibit C is the transcript of the September 23, 2020 testimony of Special Agent Kevin Kadish; and Exhibit D is the transcript of the September 23, 2020 testimony of defense investigator Kevin Ridgley.

[2] On June 7, 2021, USPO updated the violation report (the "Violation Report") to include an eleventh specification, alleging that Carter committed a federal crime on August 21, 2019 in the District of Vermont, specifically possessing with intent to distribute fentanyl, heroin, and 28 grams or more of cocaine base.

[3] Carter's appeal is still in its initial stages, with his brief due to be filed on November 23, 2021. *See United States v. Carter*, 21-1005 (2d Cir.), Dkt. 26.

[4] Rouleau was a paid CS who contacted law enforcement with this information. Special Agent Hoffman testified that following Carter's arrest, Special Agent Hoffman falsely told Carter that Rouleau received a citation so Carter would not think Rouleau was the individual providing information to law enforcement. (Ex. A, at 155:2-19; Ex. B, at 14:22-15:7).

Case 1:15-cr-00380-DLC   Document 82   Filed 10/20/21   Page 3 of 5
Case 1:15-cr-00380-DLC   Document 79   Filed 10/15/21   Page 3 of 5

Page 3

"kind of shake," and Carter lean towards the front passenger's side. (*Id.*, at 44:8-15). When Trooper DiGenova approached the truck and asked Carter what he was doing, Carter responded that he was grabbing a lighter from Rouleau's purse. (*Id.*, at 44:16-22).

Trooper DiGenova then directed Carter to step out of the truck and searched him, finding a lighter already in his pocket and approximately $3000 cash. (*Id.*, at 44:23-45:4, 83:12-17, 162:7-18). Trooper DiGenova obtained permission from Scichitano to search the truck and found a pair of gloves in the rear center console, which contained what appeared to be bags of heroin and cocaine, as well as an iPhone on the rear seat. (*Id.*, at 43:13-17, 46:7-23). The heroin was packaged in 290 glassines. (*Id.*, at 52:1-2; Ex. C, at 31:6-8). At trial, the parties stipulated that the iPhone belonged to Carter. (Ex. A, at 149:14-22). The parties further stipulated that the narcotics inside the gloves seized from the truck's rear console were approximately 41.8 grams of cocaine base and 13.9 grams of heroin mixed with fentanyl. (*Id.*, at 95:23-96:14). Following the seizure of the heroin and cocaine, Carter was arrested. (*Id.*, at 86:16-18).

Carter's iPhone contained text messages between Carter and Rouleau on August 21, 2019 between approximately 8:24 p.m. and 8:25 p.m., that is, during the traffic stop, stating the following:

- Rouleau: Put it in my purse I will take thia [sic]
- Rouleau: Right side of seat
- Carter: I don't see it
- Carter: Don't let them search car
- Carter: Please
- Carter: I can't afford to go to jail
- Rouleau: He already said yes
- Rouleau: Put it in my purse he's searching neil then me

(*Id.*, at 163:8-20, 165:3-23; GX 12A). Special Agent Hoffman testified that on the date and time the text messages were sent, he was surveilling the traffic stop, where he observed two occupants outside of the Truck. (Ex. A, at 165:24-166:14). DEA Special Agent Kadish also interpreted several text chains from Carter's phone dating between August 17, 2019, and August 21, 2019, in which Carter discussed arranging to sell cocaine, crack cocaine, and heroin to customers. (Ex. C, at 11:18-24:9). For example, in one communication, on August 21, 2019 at approximately 8:17 p.m. (that is, during the Truck stop) Carter tells an individual who had asked to buy "1 of what I like and 1 of the hard candy," slang for crack cocaine, that Carter "can't talk." (*Id.*, at 22:4-24:1). Carter's iPhone also contained a "note" created on August 21, 2019 at 7:20 p.m. listing "500 2 balls minus 400" and "800 down," references to quantities of heroin and cocaine. (*Id.*, at 24:24-25:15).

After Carter was arrested, Carter gave a recorded statement to law enforcement. (GX 15B). Carter told Special Agent Hoffman that the $3000 cash that was on his person was from

Case 1:15-cr-00380-DLC   Document 82   Filed 10/20/21   Page 4 of 5
Case 1:15-cr-00380-DLC   Document 79   Filed 10/15/21   Page 4 of 5

Page 4

construction work and a personal injury settlement.[5] (Ex. A, at 157:15-18; GX 15B). Special Agent Hoffman decided to "test" this explanation by falsely telling Carter that law enforcement had determined that some of the bills constituted pre-recorded buy money from controlled purchases of narcotics, at which point Carter admitted that the cash was from marijuana sales. (Ex. A, at 157:19-158:25; GX 15B).

Finally, Special Agent Kadish testified that a personal use quantity of crack cocaine would generally be less than a few grams, and 41 grams of crack cocaine was a quantity inconsistent with personal use. (Ex. C, at 29:19-30:13). With respect to heroin, Special Agent Kadish testified that a personal use quantity would generally be less than a couple of bundles,[6] and 290 glassines was a quantity inconsistent with personal use. (*Id.*, at 30:14-31:17).

### Legal Standards

On October 31, 2019, a grand jury sitting in the District of Vermont returned an indictment charging Carter with knowingly and intentionally possessing with intent to distribute heroin, fentanyl, and 28 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B). This charge has three elements: (i) the defendant possessed heroin, fentanyl, and 28 grams or more of cocaine base; (ii) the defendant knew he possessed the controlled substances; and (iii) the defendant possessed the controlled substances with the intent to distribute them. Sand et al., *Modern Federal Jury Instructions-Criminal* ¶ 56.01 (2021). With respect to possession, an individual nonetheless has possession of an item, even if it is not in his physical custody, if he has the "ability and intent to exercise substantial control" over the item. *Id.* Moreover, possession can be sole or joint, where more than one person has power and intention to exercise control over the item. *Id.* To establish constructive possession, "the facts adduced must support at least a plausible inference that the defendant had knowledge of and access to the illegal item." *United States v. Albarran*, 943 F. 3d 106, 119 (2d Cir. 2019) (internal quotation marks and citation omitted).

As revocation proceedings are not considered part of a criminal prosecution, defendants do not have the "full panoply of rights" as a criminal prosecution, including, for example, that the alleged violation of supervised release need only be proved by a preponderance of the evidence, not beyond a reasonable doubt. *United States v. Carthen*, 681 F.3d 94, 99-100 (2d Cir. 2012).

### Carter Committed a Federal Crime

As a threshold matter, the parties at trial stipulated that the narcotics seized from the Truck were 290 glassines of heroin mixed with fentanyl weighing approximately 13.9 grams, and cocaine base weighing approximately 41.8 grams, which testimony established were quantities consistent with distribution rather than personal use. Thus, the only two remaining elements are whether Carter possessed the narcotics, and whether he did so knowingly.

---

[5] Defense investigator Kevin Ridgley testified that Carter received payment from a civil lawsuit settlement totaling $11,989.31 on February 4, 2019. (Ex D, 9:14-21).

[6] A bundle is typically comprised of 10 glassines. (Ex. C, at 30:18-31:5).

Case 1:15-cr-00380-DLC   Document 82   Filed 10/20/21   Page 5 of 5
Case 1:15-cr-00380-DLC   Document 79   Filed 10/15/21   Page 5 of 5

Page 5

Evidence from the traffic stop, from Carter's post-arrest statement, and from Carter's phone established Carter's knowing constructive possession of the narcotics seized from the Truck by a preponderance of the evidence. First, the narcotics were found in the rear console of the Truck, where Carter was sitting both while the Truck was driving and during the traffic stop. Although proximity to the narcotics alone is insufficient to prove possession, the location of the drugs vis-à-vis Carter's location is nonetheless a factor that may be considered. Moreover, Carter's text messages with Rouleau during the traffic stop reveal his knowledge of the narcotics in the Truck, as Carter's messages plainly show that he was trying to avoid getting caught with them. After Rouleau tells Carter to "put it in my purse," Carter responds, "Don't let them search car, Please, I can't afford to go to jail." The substance of this exchange is corroborated by Trooper DiGenova's observations of Carter's movement in the Truck during the stop and Carter's explanation that he was looking for a lighter in Rouleau's purse, which proved unlikely after a search of Carter uncovered a lighter already in his pocket. Text messages from Carter's phone also confirmed Carter was selling cocaine, crack, and heroin in the days leading up to Carter's arrest, including one message where Carter told a drug customer that he could not talk during the traffic stop itself.

## Conclusion

For the reasons set forth above, the trial evidence proves by a preponderance that Carter possessed with intent to distribute heroin, fentanyl, and 28 grams or more of cocaine base on or about August 21, 2019, and Carter therefore violated his supervised release by committing a federal crime.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Emily A. Johnson
Assistant United States Attorney
(212) 637-2409

cc:  Thomas Dunn, Esq. (by ECF)
     Joseph Perry, USPO (by email)

*Review of the transcript of the September 2020 trial indicates that the Government has shown by a preponderance of the evidence that the defendant violated his supervised release as charged in Specification 11.*  /s/ [signature] 10/20/21